# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEFFERY DeANGELIS,<br>    Plaintiff, | : <br> : <br> : <br> : | CASE NO. 3:18-cv-755 (MPS) |
| v. | : <br> : | |
| DEVONIA LONG, et al.,<br>    Defendants. | : <br> : <br> : | June 4, 2018 |

## INITIAL REVIEW ORDER RE AMENDED COMPLAINT

Plaintiff Jeffery DeAngelis, currently incarcerated at the Osborn Correctional Institution in Somers, Connecticut, filed this case under 42 U.S.C. § 1983. In his amended complaint, he asserts claims for violation of his rights under the Americans with Disabilities Act and the Rehabilitation Act and other constitutional violations based on his disability. In his amended complaint, he names five defendants: ADA Coordinator Devonia Long, Captain Luis Colon, Warden Gary Wright, Captain Griffin, and the Department of Correction.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee.[1] *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing

---

[1] The plaintiff paid the filing fee to commence this action.

*Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

I.  Allegations

On September 19, 2017, the plaintiff was transferred from MacDougall Correctional Institution to Carl Robinson Correctional Institution ("Robinson"). ECF No. 6, ¶ 6. At Robinson, inmates are required to walk down six steps and then walk outside across the prison compound to go to the dining hall. *Id.*, ¶ 7. The plaintiff was unable to walk to the dining hall. The ADA coordinator at Robinson sent the plaintiff to the medical unit when correctional staff informed him of the plaintiff's difficulty. *Id.*, ¶ 8. On September 27, 2017, Dr. Wright examined the plaintiff and ordered him transferred to Osborn Correctional Institution ("Osborn") because the plaintiff was unable to walk about the compound at Robinson. *Id.*, ¶ 9. The plaintiff was transferred on September 29, 2017. *Id.*, ¶ 10.

Upon his arrival at Osborn, the plaintiff was assigned to E-block, the housing unit farthest from the dining hall and medical unit. *Id.*, ¶ 11. He was required to walk the length of three football fields to the dining hall, a much further distance than at Robinson. *Id*., ¶ 12.

On September 29, 2017, the plaintiff told Captain Colon about his disability and inability to walk. The plaintiff asked to be moved to B-block. *Id.*, ¶ 13. Captain Colon refused the request for transfer and told the plaintiff to deal with the situation. *Id.*, ¶ 14. The plaintiff

2

explained that he has degenerative disc disease with a disc protrusion displacing the S1 nerve, and that he must walk with a cane, but Captain Colon refused to transfer the plaintiff closer to the dining hall. *Id.*, ¶ 15.

Inmates are permitted twenty minutes to get to the dining hall and eat their meals. *Id.*, ¶ 16. The plaintiff was unable to walk all the way to the dining hall without stopping because his medical condition caused him to experience severe pain when walking. *Id.*, ¶ 17. By the time the plaintiff reached the dining hall, it was closed. He was required to return to his cell without a meal. *Id.*, ¶ 18.

To enter the shower in E-block, the inmate must step over a 30" wall. The shower contains no railings or mats to prevent inmates from falling. *Id.*, ¶ 19. On October 1, 2017, the plaintiff asked Captain Colon for a handicap shower, explaining that recently he had fallen in a non-handicap shower at another correctional facility. *Id.*, ¶ 20. Captain Colon denied the request and told the plaintiff to stop "being so dramatic." *Id.*, ¶ 21. On October 8, 2017, the plaintiff submitted a request for accommodation to Americans with Disabilities Act ("ADA") Coordinator Long seeking permission to use the handicap shower in the medical unit. *Id.*, ¶ 22. On October 10, 2017, the plaintiff submitted two additional requests for accommodation, seeking a single cell and access to recreation without having to negotiate twenty stairs. *Id.*, ¶ 23.

The plaintiff experiences urinary incontinence as a result of his spinal injuries. This causes him to involuntarily urinate without warning. *Id.*, ¶ 24. Incidents of incontinence have caused problems with several past cellmates and resulted in assaults by two prior cellmates. *Id.*, ¶ 25.

Although departmental directives provide that a response to a request for reasonable

accommodation should be received within two business days, the plaintiff received no response to any of the request for five weeks. *Id.*, ¶¶ 26-27. After five weeks, the plaintiff resubmitted the requests. *Id.*, ¶ 27.

On November 22, 2017, the plaintiff fell in the E-block shower, slamming his head and elbow. *Id.*, ¶¶ 28-29. After the plaintiff submitted numerous requests, Dr. Breton saw the plaintiff for his injuries on December 4, 2017. *Id.*, ¶ 30. Dr. Breton gave the plaintiff a pass to use the shower in the medical unit. *Id.*, ¶ 31. Dr. Breton told the plaintiff that ADA Coordinator Long had never spoken with him regarding the ADA request. *Id.*, ¶ 32. The plaintiff also spoke to Dr. Breton about his request for a single cell and the danger posed by his medical condition. *Id.*, ¶ 33. Dr. Breton indicated he would speak to Captain Colon and ADA Coordinator Long to try to get the plaintiff assigned to a single cell. *Id.*, ¶ 34.

The plaintiff wrote to Warden Wright four times complaining that Captain Colon and ADA Coordinator Long failed to act on, or respond to, his ADA requests or address his need to be closer to the medical unit and the dining hall. Warden Wright did not respond. *Id.*, ¶ 35. On November 28, 2017, the plaintiff submitted a grievance regarding the distance from his housing location to the dining hall and medical unit. *Id.*, ¶ 37. On December 18, 2017, the plaintiff again asked Captain Colon to transfer him to B-block. The plaintiff showed Captain Colon the shower pass and complained about the distance he had to walk to shower. Captain Colon refused the request. *Id.*, ¶¶ 38-40. On December 22, 2017, Captain Colon told the plaintiff that the warden had ordered his transfer to B-block because of the grievance. *Id.*, ¶ 41.

During the time he was in E-block, the plaintiff was unable to go to the dining hall or outside recreation and was required to use the non-handicap E-block shower. *Id.,* ¶ 42. To get

4

outside, inmates had to negotiate twenty steep concrete steps. There were sixteen steps to get to the gym. As a result, disabled inmates in E-block are confined to their cells for 23 hours per day. *Id.,* ¶ 43. Inmates housed in B-block had an additional hour of out-of-cell time. *Id.*, ¶ 44.

While in B-block, the plaintiff had problems with his cellmate because the plaintiff was unable to control his bladder. *Id.*, ¶ 46. On December 28, 2017, the plaintiff submitted a request to Captain Griffin asking for a cell change. *Id.*, ¶ 47.

The same day he wrote to ADA Coordinator Long asking about his unanswered requests. *Id.*, ¶ 48. On January 5, 2018, the plaintiff wrote to then Deputy Warden Wright complaining that ADA Coordinator Long refused to address his ADA requests. *Id.*, ¶ 49. On January 8, 2018, ADA Coordinator Long called the plaintiff to her office and told him that he would not get a single cell or permission to shower in the medical unit. The plaintiff informed her that Dr. Breton had already given him a shower pass. *Id.*, ¶ 50. ADA Coordinator Long became angry and told the plaintiff that he would not get a single cell and that the Department of Correction would not build him a ramp to go to recreation. *Id.*, ¶ 51-53. She said that she would look into the plaintiff's claim that Dr. Breton had written to Dr. Farinella and Assistant Attorney General Madeline Melchionne about his request for a single cell. *Id.*, ¶ 54-55. On January 13, 2018, Warden Faneuff approved the ADA request to shower in the medical unit. *Id.*, ¶ 57-58.

On January 17 and 23, 2018, the plaintiff wrote to Captain Griffin again asking for a cell change because of problems with his cellmate over the plaintiff's urinary incontinence. *Id.*, ¶¶ 59, 61. On January 29, 2018, the plaintiff saw Dr. Wright. *Id.*, ¶ 62. In addition to ordering a follow-up surgical consult with an orthopedic specialist, Dr. Wright indicated that he would follow-up with ADA Coordinator Long regarding the plaintiff's request for a single cell. *Id.*, ¶

5

63. On February 2, 2018, the plaintiff informed ADA Coordinator Long that Dr. Wright was aware of his request for a single cell and would be speaking to her. *Id.*, ¶ 64. On February 23, 2018, ADA Coordinator Long indicated that she had emailed Dr. Wright. *Id.*, ¶ 65.

On February 28, 2018, the plaintiff was incontinent and urinated on himself and his cellmate's sneakers. In response, his cellmate punched the plaintiff in the face and repeatedly kicked him. *Id.*, ¶ 66. On March 9, 2018, Captain Griffin stated that he was moving the plaintiff out of B-block because of the plaintiff's repeated complaints to Warden Wright regarding the denial of a cell change. *Id.*, ¶ 67.

On March 10, 2018, the plaintiff was ordered to move to C-block. *Id.*, ¶ 68. The plaintiff objected to the move and asked to speak to a lieutenant. *Id.*, ¶ 69. The lieutenant cancelled the order to move to C-block and moved the plaintiff to J-one, a unit closer to the dining hall than C-block. *Id.*, ¶ 70.

J-one is a dormitory room without walls or privacy. *Id.*, ¶ 72. The bathroom is one room with no stall doors or walls for privacy should the plaintiff be incontinent. *Id.* Other inmates and staff of both sexes can view inmates using the bathroom. *Id.*, ¶ 73. Dr. Wright ordered that the plaintiff utilize a catheter connected to a leg bag to collect urine. *Id.*, ¶ 74. On March 18, 2018, the plaintiff wrote to Warden Wright complaining about the five-month delay in addressing his ADA request for a single cell. The plaintiff stated that he needed a single call because there was no area in J-one for him to change the catheter in private. *Id.*, ¶ 75. On March 21, 2018, the plaintiff wrote to Captain Colon in his capacity as back-up ADA Coordinator. *Id.*, ¶¶ 76-77.

On April 6, 2018, the plaintiff met with Health Services Administrator ("HSA") Richard Furey who noted the plaintiff's need for privacy to change the catheter. HSA Furey also noted

6

that the plaintiff has a pass to shower in the medical unit and that B-block is close to the medical unit. HSA Furey contacted Captain Griffin for permission to return the plaintiff to B-block. *Id.*, ¶¶ 78-79. Captain Griffin was on vacation, so HSA Furey arranged the transfer with Captain Manning and Counselor Supervisor Moore. *Id.*, ¶¶ 80-83. On April 10, 2018, HSA Furey told the plaintiff that he would return to B-block when a bed became available. *Id.*, ¶ 82. The plaintiff returned to B-block on April 11, 2018. His cell was directly across from the medical unit. *Id.*, ¶ 84.

On April 18, 2018, Captain Griffin returned from vacation. He complained that B-block was not a medical unit and the plaintiff needed to have a job to be housed in B-block. Captain Griffin said that, because the plaintiff was disabled, he would transfer him to another housing unit. *Id.*, ¶ 85. The plaintiff explained that Captain Manning and HSA Furey had moved him to the unit and asked to stay. *Id.*, ¶ 86. Captain Griffin stated that he was not going to make one of his workers share a cell with someone who urinates on himself. *Id.*, ¶ 87. Many inmates heard the exchange and have been harassing the plaintiff because of his urinary incontinence. *Id.*, ¶¶ 88-89.

On April 18, 2018, the plaintiff presented his complaints regarding Captain Griffin, Captain Colon and ADA Coordinator Long to Warden Wright. *Id.*, ¶ 90. Warden Wright refused to get involved and merely referred the plaintiff to Captain Colon and ADA Coordinator Long. *Id.*, ¶ 92. On April 19, 2018, the plaintiff was transferred to C-block, which is further from the medical unit and dining hall. *Id.*, ¶ 94. The plaintiff submitted additional letters and ADA requests. *Id.*, ¶¶ 95-97. On May 1, 2018, the plaintiff wrote to Captain Colon complaining that he was being discriminated against because of his disability. The plaintiff has been

7

classified for a job in B-block since February 2018. He has not been given a job while another inmate who is ineligible for a job continues to work in B-block. Other inmates are permitted to remain in B-block for medical reasons but the plaintiff is not. *Id.*, ¶ 98.

On May 2, 2018, Counselor Supervisor Moore offered to give the plaintiff a single cell in J-one. Captain Colon did not agree. *Id.*, ¶ 99. On May 3, 2018, Captain Colon notified the plaintiff that his ADA request for a single cell was denied and that the plaintiff's ADA accommodations had been met; he was assigned to a housing unit according to his unassigned classification. *Id.*, ¶ 100. The plaintiff contends that he was unable to appeal the ADA decision because Captain Colon did not put the response on the correct form. *Id.*, ¶¶ 101-02.

On May 8, 2018, Warden Wright informed the plaintiff that Captain Colon would make arrangements for him to attend outside recreation. *Id.*, ¶ 104. The following day, Captain Colon gave the plaintiff an ADA Rec Pass, which enabled him to go to the medical unit and take an elevator to go to recreation. *Id.*, ¶ 105.

On May 9, 2018, the plaintiff was returned to J-one. *Id.*, ¶ 106. On May 10, 2018, Captain Colon responded to the plaintiff's complaints of discrimination by informing the plaintiff that he could apply for any job within the facility which he thought appropriate. *Id.*, ¶ 107. The plaintiff does not believe that Captain Colon investigated his claim that he has been approved for a job in B-block since February 2018. *Id.*, ¶ 108.

On May 17, 2018, Officer Iyarre told the medical unit that the plaintiff never went to the dining hall for meals. In response, Dr. Ashraf saw the plaintiff and ordered that the plaintiff's meals be brought to his housing unit. *Id.*, ¶¶ 109-10.

II.     Analysis

The plaintiff describes seventeen purported claims. *Id.*, ¶¶ 112-32. Many of these claims overlap. After careful review, the Court concludes that the amended complaint sets forth six claims relating to the plaintiff's requests for accommodation of his disability and discrimination based on that disability. The plaintiff states that the ADA claims are brought against the defendants in their official capacities and all other claims are brought against the defendants in their individual capacities. For relief, the plaintiff seeks an order that he be housed in a single cell and damages.

   A.     Violation of the Americans with Disabilities Act and Rehabilitation Act

The first claim is for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794(a). The standards for determining whether the plaintiff states a claim under the ADA and the RA are almost identical. The only difference in the statutes is that the RA applies to entities receiving federal financial assistance, and Title II of the ADA applies to all public entities. *Messier v. Southbury Training Sch.,* 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008). This difference in the two statutes is not relevant to the analysis. *See Super v. J. D'Amelia & Assocs., LLC*, No. 3:09cv831(SRU), 2010 WL 3926887, at *13 (D. Conn. Sept. 30, 2010) (explaining that Connecticut's continued acceptance of federal funds constitutes a waiver of its immunity from suit under § 504 of the RA). The discussion below, although referencing only the ADA, applies to both the ADA and RA claims.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. This provision applies to state prisoners. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998).

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include walking and the operation of major bodily functions, including the bladder. *See* 42 U.S.C. § 12102(2)(A) & (B). The determination whether an individual is disabled should be made without considering ameliorative effects of medication or assistive devices. *See* 42 U.S.C. § 12102(4)(E). When analyzing these claims, "courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities." *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 852 (2d Cir. 2013) (citation and internal quotation marks omitted).

The plaintiff alleges that he suffers from degenerative disc disease with a disc protrusion displacing the S1 nerve. As a result, walking is painful and he must use a cane. In addition, the condition causes the plaintiff to experience urinary incontinence. The Court concludes that, at this stage of litigation, the plaintiff has sufficiently alleged facts showing that he has a qualifying disability.

The defendants on the ADA and RA claims are the Department of Correction and correctional officials named in official capacity. The Second Circuit has held that ADA and RA claims may proceed against state officials in official capacity for injunctive relief. *Henrietta D v. Bloomberg*, 331 F.3d 261, 289 (2d Cir. 2003). In addition, a claim for damages for violation of the ADA or RA is permitted against the state, or a state official in his official capacity, as long as

the "violation was motivated by discriminatory animus or ill will due to the disability." *Garcia v. S.U.N.Y. Health Scis. Ctr.*, 280 F.3d 98, 111-12 (2d Cir. 2001).

The following purported claims will be considered as part of the ADA and RA claim: the Department of Correction has a policy of not responding to requests for reasonable accommodation in a timely manner or at all; defendants Colon and Long failed to respond to the plaintiff's requests for accommodation or did not do so in a timely manner; the defendants did not provide access to the outdoors for eight months; defendants Griffin, Colon and Wright twice forced him to leave B-block; and the defendants have not accommodated his disabilities. ECF No. 6, ¶¶ 112, 113, 116, 120, 121, 126.

B.  Deliberate Indifference to Health and Safety

The plaintiff asserts several Eighth Amendment claims based on deliberate indifference to his health and safety. He contends that defendant Colon forced him to live in E-block for three months; defendants Long, Colon, and Wright required him to use the E-block shower, resulting in his fall and injury; defendants Griffin, Colon, and Wright forced him to leave B-block twice after medical staff ordered his transfer there; the defendants required him to pack and carry his property six times in six months despite his disability; the defendants failed to provide food and/or forced him to walk long distances to get meals; and the defendants failed to prevent the plaintiff from being assaulted after he informed them of threats from his cellmates. ECF No. 6, ¶¶ 114, 115, 116, 119, 123, 127. The Court considers these claims to challenge the conditions of his confinement in light of his disabilities.

An inmate may prevail on an Eighth Amendment claim based on unconstitutional conditions of confinement "only where he proves both an objective element—that the prison

officials' transgression was 'sufficiently serious'—and a subjective element—that the official acted, or omitted to act with a 'sufficiently culpable state of mind,' meaning with a 'deliberate indifference to inmate health or safety.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A condition is objectively serious if it deprives an inmate of "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (internal quotation marks omitted)). To meet the subjective component, the plaintiff must allege that prison officials knew "of and disregard[ed] an excessive risk to inmate health or safety," that is, that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and … dr[e]w that inference." *Id.* at 185-86.

The plaintiff alleges that he informed the defendants numerous times that he was unable to walk from E-block to the dining hall in sufficient time to eat, that he was unable to safely use the shower in E-block, and that he had been threatened by current cellmates and assaulted by past cellmates because of his urinary incontinence. He also alleges that despite medical orders that he be confined in B-block, he was twice forced to move to other housing units carrying his property. These allegations are sufficient to state a plausible claims for deliberate indifference to health and safety.

The plaintiff also contends that defendant Griffin violated HIPAA laws by disclosing confidential medical information and, as a result, the plaintiff was harassed by other inmates. ECF No. 6, ¶ 118. The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d, et seq., does not create a private right of action and cannot support a claim under section 1983. *See Rogers v. Rensslaer County Sheriff's Dep't*, No. 1:14-CV-

01162(MAD/TWD), 2015 WL 4404788, at *7 (W.D.N.Y. July 17, 2015) ("It is well established that, because there is no private right of action under HIPAA, a violation of the Act cannot serve as the basis of a § 1983 claim.")(citing cases). Any HIPAA claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

  C. <u>Privacy</u>

The plaintiff contends that the defendants violated his Fourth Amendment right to bodily privacy by forcing him to use the bathroom and change his catheter within sight of inmates and staff. ECF No. 6, ¶ 122. Inmates retain a limited right to bodily privacy under the Fourth Amendment. *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). When considering such a claim, the court undertakes a two-part inquiry. First, the court must determine whether the inmate has "exhibit[ed] an actual, subjective expectation of bodily privacy." *Id.* (citation and internal quotation marks omitted). Second, the court must evaluate the defendants' justification for the intrusion. *Id.*

The allegations support an inference that the plaintiff had an actual, subjective expectation of privacy in this situation. There is no information, however, regarding the defendants' reasons for denying the plaintiff's request for privacy. Absent such information, the Court cannot properly evaluate this claim. The plaintiff's Fourth Amendment privacy claim will proceed at this time.

  D. <u>Supervisory Liability</u>

The plaintiff argues that the Department of Correction and defendant Wright failed to adequately train defendants Long and Colon to understand the ADA procedures, and that the Department of Correction appointed untrained persons to handle ADA requests. ECF No. 6, ¶¶

132, 124.

The Court first notes that the Department of Correction is not a proper defendant in a section 1983 claim. Section 1983 requires that each defendant be a person acting under color of state law. 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State … subjects or causes to be subjected …."). A state agency is not a person within the meaning of section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (state agencies cannot be sued under section 1983). Thus, while the Department of Correction is a proper defendant for the plaintiff's ADA and RA claims, it is not a proper defendant for the remaining claims.

To state a claim for supervisory liability against defendant Wright, the plaintiff must demonstrate that the defendant (1) actually and directly participated in the alleged constitutional violation; (2) failed to remedy a wrong after being informed of it though a report or appeal; (3) created or approved a policy or custom that sanctioned objectionable conduct that rose to the level of a constitutional violation, or permitted such a policy or custom to continue; (4) was grossly negligent in his supervision of the officers who committed the constitutional violation; or (5) was deliberately indifferent to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring. *See Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)); *see also Shakir v. Derby Police Dep't*, 284 F. Supp. 3d 165, 181-82 (D. Conn. 2018) (following *Colon* because, although acknowledging that Supreme Court may have heightened pleading requirements for supervisory liability, Second Circuit has not rejected standard in *Colon*).

The plaintiff alleges that he repeatedly informed defendant Wright of his problems

14

getting his ADA complaints addressed but defendant Wright took no action. This allegation is sufficient to state a plausible claim for supervisory liability against defendant Wright.

E. Retaliation

The plaintiff contends that defendant Griffin retaliated against the plaintiff for his complaints to the warden by moving him out of B-block. ECF No. 6, ¶ 131.

To establish a claim for retaliation in contravention of the First Amendment, the plaintiff must demonstrate "(1) protected speech or conduct, (2) adverse action by defendant, and (3) a causal connection between the protected speech and the adverse action." *Bilal v. White*, 494 F. App'x 143, 146 (2d Cir. 2012). Even if the plaintiff presents evidence satisfying each element, the defendants may avoid liability by showing that they "would have disciplined the plaintiff even in the absence of the protected conduct." *Id.* (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted). Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts. Conclusory allegations of retaliatory conduct are not sufficient. *See Dolan v. Connolly,* 794 F.3d 290, 295 (2d Cir. 2015) ("First Amendment retaliation claims brought by prisoners must 'be supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'") (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Filing a grievance is a constitutionally protected activity and, therefore, can constitute the required protected conduct to support a retaliation claim. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). The plaintiff alleges that he made oral and written complaints to defendant Wright about defendant Griffin's actions. At this stage of litigation, the temporal proximity between the transfer and the complaints permits an inference of retaliatory motive. *Bennett v.*

15

*Goord*, 343 F.3d 133, 138 (2d Cir. 2003). The retaliation claim will proceed against defendant Griffin to enable plaintiff to obtain further evidence during discovery. *See Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017) (noting that, although temporal proximity constitutes circumstantial evidence of retaliation, court has consistently required further evidence before retaliation claim can proceed to trial).

    F.    <u>Equal Protection</u>

The plaintiff contends that defendants Griffin, Colon, and Wright discriminated against the plaintiff and denied him equal protection of the laws by denying him the ability to work and live in B-block. ECF No. 6, ¶ 117.

The Equal Protection Clause protects prisoners from invidious discrimination. This provision does not mandate identical treatment for each individual; rather it requires that similarly situated persons be treated the same. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985). To state an equal protection claim, the plaintiff must allege facts showing that he was treated differently from similarly situated individuals and that the reason for the different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injury a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).

The plaintiff does not allege that he is a member of a protected class or that he was treated differently because of a suspect classification. *See Robles v. Dennison*, 745 F. Supp. 2d 244, 301 n.18 (W.D.N.Y. 2010) (merely being a prisoner is insufficient to put plaintiff in a suspect class), *aff'd*, 449 F. App'x 51 (2d Cir. 2011). Thus, the Court assumes that the plaintiff

is asserting a "class of one" equal protection claim.

To state a valid claim under a "class of one," the plaintiff must allege, first, that he was intentionally treated differently from others who are similarly situated. Second, he must allege facts showing that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). He must allege an "extremely high" level of similarity with the person to whom he is comparing himself; their circumstances must be "prima facie identical." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2005), *overruled in part on other grounds by Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008).

The plaintiff alleges that he has been approved for a job on B-block since February 2018 but defendants Griffin, Colon, and Wright ordered or approved his transfer because he could not work. He also alleges that other inmates with medical issues were permitted to remain in B-block and that an inmate ineligible for prison jobs was permitted to stay on B-block and work in a prison job. These allegations are sufficient to state a plausible equal protection claim.

III. Conclusion

The HIPAA claim and the non-ADA claims against the Department of Correction are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b). The case will proceed against the defendants on all claims specified in this order.

The Court enters the following orders:

(1)   As the plaintiff paid the filing fee to commence this action, he is directed to effect service on the defendants in individual and official capacity within **ninety (90) days** from the date of this order. Service shall be effected in accordance with Rule 4 of the Federal Rules of Civil Procedure. Failure to effect service within the time specified may result in the dismissal of

17

this action as to any defendant who has not been served.

(2)     **The Clerk shall** send a courtesy copy of the Amended Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(3)     The defendants shall file their response to the Amended Complaint, either an answer or motion to dismiss, within **ninety (90) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(4)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **eight months (240 days)** from the date of this order. Discovery requests need not be filed with the court.

(5)     All motions for summary judgment shall be filed within **nine months (270 days)** from the date of this order.

(6)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the

notification of change of address. The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

      (8)      The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.

      **SO ORDERED** this 4th day of June 2018 at Hartford, Connecticut.

                                              /s/
                                      Michael P. Shea
                                      United States District Judge